UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CONNECTICUT IRONWORKERS )
EMPLOYERS ASSOCIATION, INC., a )
Connecticut corporation and association of )
employers; ASSOCIATED SHEET METAL )
AND ROOFING CONTRACTORS OF )
CONNECTICUT, INC., a Connecticut )
corporation and association of employers; )
M.R.S. ENTERPRISES, INC., a Connecticut )
corporation; BARRETT, INC., a )
Connecticut corporation; ERNEST )
PETERSON, INCORPORATED, a )
Connecticut corporation; BERLIN STEEL )
CONSTRUCTION COMPANY, a )
Connecticut corporation; SHEET METAL )
WORKERS' LOCAL NO. 40 PENSION )
FUND, an ERISA Pension Fund; IRON )
WORKERS' LOCALS NO. 15 AND 424 )
PENSION PLAN, an ERISA Pension Fund; )
INTERNATIONAL ASSOCIATION OF )
BRIDGE, STRUCTURAL, )
ORNAMENTAL AND REINFORCING )
IRON WORKERS LOCAL NO. 15, an )
unincorporated association and a labor )
organization; INTERNATIONAL )
ASSOCIATION OF BRIDGE, )
STRUCTURAL, ORNAMENTAL AND )
REINFORCING IRON WORKERS LOCAL )
37, an unincorporated association and a labor )
organization; INTERNATIONAL )
ASSOCIATION OF BRIDGE, )
STRUCTURAL, ORNAMENTAL AND )
REINFORCING IRON WORKERS LOCAL )
424, an unincorporated association and a )
labor organization; SHEET METAL )
WORKERS LOCAL 38, an unincorporated )
association and a labor organization; )
SHEET METAL WORKERS' LOCAL NO. )
40, an unincorporated association and a )
labor organization; PAINTERS, DRYWALL )
FINISHERS, GLAZIERS AND ALLIED )
TRADES DISTRICT COUNCIL 11 OF )
THE INTERNATIONAL UNION OF )

PAINTERS AND ALLIED TRADES,   )
AFL-CIO, CLC, an unincorporated   )
association and a labor organization   )
consisting of International Union of Painters )
and Allied Trades Local Unions in   )
Connecticut, Rhode Island and elsewhere,   )
including Glaziers Local Union No. 1333,   )
and Glaziers Union Local No. 1274;   )        Cause No.
GLAZIERS UNION NO. 1333, an   )
unincorporated association and a labor   )
organization; and GLAZIERS UNION   )
LOCAL NO. 1274, an unincorporated   )
association and a labor organization,   )
                                          )
        Plaintiffs,   )        JURY TRIAL WAIVED
                                          )
v.   )
                                          )
NEW ENGLAND REGIONAL COUNCIL )
OF CARPENTERS,   )
                                          )
        Defendant.   )

Serve at:        Christopher N. Souris, Esq.
                 225 Friend Street
                 Boston, MA 02114

## **COMPLAINT**

COME NOW Plaintiffs, by counsel, and for their Complaint against Defendant, state as follows:

### **Employer Parties**

1.      Plaintiff Connecticut Ironworkers Employers Association, Inc. (hereinafter "Ironworkers Employers"), is a corporation organized, existing and doing business under the laws of the State of Connecticut.

2.      Ironworkers Employers engages in collective bargaining on behalf of its member

employers who do business in the construction industry in the State of Connecticut with various labor organizations, including Iron Workers; Sheet Metal Workers; and those Glaziers, who are members of Local Unions affiliated with District Council 11 of the International Union of Painters and Allied Trades, AFL-CIO, CLC (hereinafter "IUPAT Glaziers").   Plaintiff Ironworkers Employers' member employers have collective bargaining agreements with Plaintiff Iron Workers, and sometimes with Plaintiff Sheet Metal Workers and Plaintiff IUPAT Glaziers labor organizations, which agreements cover and include work of the type in dispute and at issue in this Complaint.

3.     Plaintiff Associated Sheet Metal and Roofing Contractors of Connecticut, Inc. (hereinafter "Sheet Metal Contractors"), is a corporation existing and doing business under the laws of the State of Connecticut.

4.     Sheet Metal Contractors engages in collective bargaining on behalf of its member employers who have collective bargaining agreements and do business in the construction industry in the State of Connecticut within the relevant market area, as defined in Paragraph 48 herein, and with Plaintiff Sheet Metal Workers Local Unions who represent individual employees in Sheet Metal Contractors' bargaining units who perform construction work of the type at issue in this case.

5.     Plaintiff M.R.S. Enterprises, Inc. (hereinafter "M.R.S."), is a corporation organized, existing and doing business under the laws of the State of Connecticut, and at all relevant times has been engaged in the business of construction of the relevant work, as defined in Paragraph 47 herein, which corporation employs Plaintiff Iron Worker and Plaintiff Sheet Metal Workers members in the relevant market area, as defined in Paragraph 48 herein, which is an area represented by Plaintiff labor organizations with consistent terms and conditions of employment and consistent employer business practices.

6.     Plaintiff M.R.S. does business and seeks to continue to compete for business within the relevant market area, as defined in Paragraph 48 herein, performing relevant work, as defined in Paragraph 47 herein, in the construction industry, and it negotiates collective bargaining agreements with certain labor organizations, including Plaintiff Iron Workers and Plaintiff Sheet Metal Workers.

7.     Plaintiff Barrett, Inc. (hereinafter "Barrett"), is a corporation organized, existing and doing business under the laws of the State of Connecticut which performs relevant work, as defined in Paragraph 47 herein, within the relevant market area, as defined in Paragraph 48 herein, and at all relevant times has been engaged in the business of construction and installation of exterior metal roofing and related materials, and which employs Plaintiff Sheet Metal Workers.

8.     Plaintiff Barrett does business within the relevant market area, as defined in Paragraph 48 herein, performing relevant work, as defined in Paragraph 47 herein, in the construction industry and negotiates collective bargaining agreements with Plaintiff labor organizations.

9.     Plaintiff Ernest Peterson, Inc. (hereinafter "Peterson"), is a corporation organized, existing and doing business under the laws of the State of Connecticut and at all times has been engaged in the business of performing relevant work, as defined in Paragraph 47 herein, in the relevant market area, as defined in Paragraph 48 herein.

10.     Plaintiff Berlin Steel Construction Company (hereinafter "Berlin Steel"), is a corporation organized, existing and doing business under the laws of the State of Connecticut and at all times has been engaged in the performance of relevant work, as defined in Paragraph 47 herein, within the relevant market area, as defined in Paragraph 48 herein.

4

## Plaintiff Pension Funds Parties

11.    Plaintiff Sheet Metal Workers' Local No. 40 Pension Fund has administrative offices in the State of Connecticut whose participants are members of Sheet Metal Workers' Local No. 40, and who perform relevant work, as defined in Paragraph 47 herein, in the relevant market area, as defined in Paragraph 48 herein.

12.    Sheet Metal Workers' Local No. 40 Pension Fund is a Defined Benefit Pension Plan under ERISA, promising and guaranteeing to participants credits and benefits based on numbers of hours worked in the industry during a calendar or Plan year.

13.    Under the Pension Protection Act of 2006, there is a requirement for funding of the Sheet Metal Workers' Local No. 40 Pension Fund, a defined benefit multi-employer pension plan, requiring that there be no funding standard account deficiency at the end of the Plan's 13-year rehabilitation.

14.    If Defendant persists in its conduct, and through conspiratorial efforts with general contractors and construction managers, compels employers who are signatory to Plaintiff Sheet Metal Workers' Local No. 40 Pension Fund collective bargaining agreements to perform work otherwise and historically performed by members of Sheet Metal Workers' Local No. 40, who are participants of the Sheet Metal Workers' Local No. 40 Pension Fund, exclusively with Carpenters, then the number of hours for which contributions are made in Sheet Metal Workers' Local No. 40 Pension Fund, will be significantly reduced or eliminated.

15.    Under Title IV of ERISA, including the Multi-employer Pension Plan Act of 1981, if all work previously performed by a contractor who performs only relevant work is now performed for that contractor by Carpenters, withdrawal liability will be triggered, which may or may not be

collectable by the Sheet Metal Workers' Local No. 40 Pension Fund from that contractor or employer.

16.     Withdrawal liability in the building and construction industry is incurred by individual employers when the relevant work historically performed by the participants of the Sheet Metal Workers Local No. No. 40 Pension Fund continues to be performed within the geographic jurisdiction of that plan (which is part of the relevant market area), but is now exclusively or primarily (more than 70% reduction in employer contribution hours for partial withdrawal) performed by members of another craft.

17.     Under the rules applying in the building and construction industry pursuant to 29 U.S.C. 1383(b), 29 U.S.C. 1381, and 29 U.S.C. 1385, if, in conspiracy with Carpenter signatory construction managers and general contractors, Defendant succeeds in compelling Plaintiff employers and Plaintiff employer association members to become signatory with Carpenters and Plaintiff employers and Plaintiff employer association members have future work which was traditionally performed by Plaintiff pension plan participants, solely or primarily performed with Carpenters, then withdrawal liability or partial withdrawal liability will be incurred if such work is commenced within 5 years of cessation of contributions by each Plaintiff employer to Plaintiff pension funds.

18.     The potential withdrawal liability or partial withdrawal liability exposure to Plaintiff employers, in view of the underfunded status of Plaintiff pension funds, which has resulted in substantial part from the world-wide economic collapse of 2008, would be huge.

19.     The net effects of successful conspiratorial efforts by Defendant Carpenters and Carpenter signatory construction managers and general contractors to compel employers who are not

now signatory to the Carpenters to become signatory to the Carpenters and to perform relevant work exclusively or primarily by the Carpenters, thereby renouncing the historic performance of said work by Sheet Metal Workers' Local No. 40 Pension Fund participants pursuant to collective bargaining agreements with Plaintiff Sheet Metal Workers' Local No. 40, would be to increase the withdrawal liability exposure of said employers to the pension fund, since said fund is significantly underfunded, to jeopardize the pension rights of participants who are bargaining unit members of said employers, and to reduce incoming contributions to the respective pension funds.

20.     Plaintiff Iron Workers' Locals No. 15 and 424 Pension Fund has administrative offices in the State of Connecticut whose participants are members of Iron Workers' Local 15 and 424, and who perform the relevant work within the relevant market area.

21.     Iron Workers' Locals No. 15 and 424 Pension Fund is a Defined Benefit Pension Plan under ERISA, promising and guaranteeing to participants credits and benefits based on numbers of hours worked in the industry during a calendar or Plan year.

22.     Under the Pension Protection Act of 2006, there is a requirement for funding of the Iron Workers' Locals No. 15 and 424 Pension Fund, a defined benefit multi-employer pension plan, requiring that there be no funding standard account deficiency at the end of the Plan's 13-year rehabilitation.

23.     If Defendant persists in its conduct, and through conspiratorial efforts with general contractors and construction managers, compels employers who are signatory to Plaintiff Iron Workers' Locals No. 15 and 424 Pension Fund collective bargaining agreements to perform work otherwise and historically performed by members of Plaintiffs Iron Workers' Locals No. 15 and 424, who are participants in the Iron Workers' Local No. 15 and 424 Pension Fund, exclusively with

7

Carpenters, then the number of hours for which contributions are made in the Iron Workers' Locals No. 15 and 424 Pension Fund will be significantly reduced or eliminated.

24.     Under Title IV of ERISA, including the Multi-employer Pension Plan Act of 1981, if all work previously performed by a contractor who performs only relevant work is now performed for that contractor by Carpenters, withdrawal liability will be triggered, which may or may not be collectable by the Iron Workers' Locals No. 15 and 424 Pension Fund from that contractor or employer.

25.     Withdrawal liability in the building and construction industry is incurred by individual employers when the relevant work historically performed by the participants of the Iron Workers' Locals No. 15 and 424 Pension Fund continues to be performed within the geographic jurisdiction of that plan (which is part of the relevant market area), but is now exclusively or primarily (more than 70% reduction in employer contribution hours for partial withdrawal) performed by members of another craft.

26.     Under the rules applying in the building and construction industry pursuant to 29 U.S.C. 1383(b), 29 U.S.C. 1381, and 29 U.S.C. 1385, if Defendant, in conspiracy with Carpenter signatory construction managers and general contractors, succeeds in compelling Plaintiff employers and Plaintiff employer association members to become signatory with Carpenters, and Plaintiff employers and Plaintiff employer association members have future work which was traditionally performed by Plaintiff pension plan participants performed solely or primarily with Carpenters, then withdrawal liability or partial withdrawal liability will be incurred if such work is commenced within 5 years of cessation of contributions by each Plaintiff employer to Plaintiff pension funds.

27.     The potential withdrawal liability or partial withdrawal liability exposure to Plaintiff

8

employers, in view of the underfunded status of Plaintiff pension funds, which has resulted in substantial part from the world-wide economic collapse of 2008, would be huge.

28.    The net effects of successful conspiratorial efforts by Defendant Carpenters and Carpenter signatory construction managers and general contractors to compel employers who are not now signatory to the Carpenters to become signatory to the Carpenters and to perform relevant work exclusively or primarily by the Carpenters, thereby renouncing the historic performance of said work by Iron Workers' Locals No. 15 and 424 Pension Fund participants pursuant to collective bargaining agreements with Plaintiff Iron Workers' Locals No. 15 and 424, would be to increase the withdrawal liability exposure of said employers to the pension fund, since said fund is significantly underfunded, to jeopardize the pension rights of participants who are bargaining unit members of said employers, and to reduce incoming contributions to the pension funds.

29.    Members of Plaintiff employer associations and Plaintiff employers make substantial contributions on a dollars and cents per hour basis, to attempt to fund Plaintiff pension funds.

30.    If Defendant, in conspiracy with Carpenter signatory construction managers and general contractors, succeeds in excluding Plaintiff employer association members, Plaintiff employers and Plaintiff labor organization members from bidding, performing, or contracting to perform the relevant work and if Defendant pursuing said conspiracies succeeds in ensuring that all said work is performed within the relevant market area only by Defendant Carpenters, then Plaintiff employers and members of Plaintiff employer associations will likely incur increased pension contributions as a result of the reduction of hours performed by their members in the relevant market area.

31.    If members of Plaintiff employer associations and Plaintiff employers perform said

9

relevant work exclusively or primarily with Carpenters, after executing collective bargaining agreements as demanded by Defendant Carpenters, in conspiracy with Carpenter signatory construction managers and general contractors, then withdrawal liability, in some instances in the millions of dollars, will be incurred by individual employers, including Plaintiff employers, or, alternatively, exposure to payment of "double" fringe benefits (fringe benefits for the work actually performed by Carpenters) and payment to the Plaintiff pension funds for hours which should have been worked by Plaintiff members. Said conspiratorial conduct shall result in a reduction in the contributions to said Plaintiff funds, and in addition, a substantial reduction in revenues received by the funds if the withdrawal liabilities cannot be collected.

## **Plaintiff Labor Organization Parties**

32.     Plaintiff International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local No. 15 (hereinafter "Iron Workers Local No. 15"), is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

33.     Plaintiff Iron Workers Local No. 15 engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Iron Workers collective bargaining agreements on behalf of bargaining unit members, including Iron Workers members in the relevant market area.

34.     Plaintiff International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local No. 37 (hereinafter "Iron Workers Local No. 37"), is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

35.     Plaintiff Iron Workers Local No. 37 engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Iron Workers

collective bargaining agreements on behalf of bargaining unit members, including Iron Workers members in the relevant market area.

36. Plaintiff International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers Local No. 424 (hereinafter "Iron Workers Local No. 424"), is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

37. Plaintiff Iron Workers Local No. 424 engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Iron Workers collective bargaining agreements on behalf of bargaining unit members, including Iron Workers members in the relevant market area.

38. Plaintiff Sheet Metal Workers Local 38, is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

39. Plaintiff Sheet Metal Workers Local 38 engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Sheet Metal Workers collective bargaining agreements on behalf of bargaining unit members, including Sheet Metal Workers members in the relevant market area.

40. Plaintiff Sheet Metal Workers' Local No. 40, is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

41. Plaintiff Sheet Metal Workers' Local No. 40 engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Sheet Metal Workers' Local No. 40 collective bargaining agreements on behalf of bargaining unit members, including Sheet Metal Workers members in the relevant market area.

42. Plaintiff Painters, Drywall Finishers, Glaziers and Allied Trades District Council 11

11

of the International Union of Painters and Allied Trades, AFL-CIO, CLC (hereinafter "District Council"), is a voluntary unincorporated association and labor organization under 29 U.S.C. 152(5).

43.     Plaintiff District Council engages in collective bargaining and the enforcement of collective bargaining agreements with employers signatory to Plaintiff District Council collective bargaining agreements on behalf of bargaining unit members, including IUPAT Glaziers members in the relevant market area.

44.     Plaintiffs Glaziers Local 1333 and Glaziers Local 1274 (hereinafter "Glaziers") are voluntary unincorporated associations and labor organizations under 29 U.S.C. 152(5).

45.     Plaintiff District Council engages in collective bargaining for Plaintiffs Glaziers 1333 and 1274, and is involved in the enforcement of collective bargaining agreements with employers signatory to District Council collective bargaining agreements on behalf of bargaining unit members, including Glaziers members in the relevant market area.

## Defendant Labor Organization

46.     Defendant New England Regional Council of Carpenters (hereinafter "Carpenters") is an unincorporated association and labor organization under 29 U.S.C. 152(5), which conducts activities as a labor organization throughout New England, in the relevant market area.  Defendant is engaged in interstate commerce and its actions described herein affect interstate commerce.

## Relevant Work

47.     The "relevant work" consists of exterior building enclosure systems such as exterior metal panels, including, but not limited to, composite wall panels, foam panels and insulated panels systems; exterior panelized window systems, punched windows, curtain wall, store fronts; also including metal roofing systems and related components within the unionized construction industry.

## Relevant Market Area

48.     The relevant market area is Connecticut, Rhode Island and Western Massachusetts, including the counties of Berkshire, Franklin, Hampshire and Hampden.

## Jurisdiction and Venue

49.     Original jurisdiction as to the matters alleged herein is based on 28 U.S.C. Section 1331 (Federal Question), 28 U.S.C. Section 1337 (Civil Action Arising Under an Act of Congress Regulating Commerce or Protecting Commerce Against Restraints Upon Monopolies), 28 U.S.C. Sections 2201 through 2202 (Federal Declaratory Judgment Act), 15 U.S.C. Section 15 (Antitrust), and 15 U.S.C. Section 26 (Injunctive Relief).

50.     Original jurisdiction also lies with this Court based on 29 U.S.C. Section 187(a) of the Labor Management Relations Act, which provides a damage remedy for unfair labor practices, including agreements prohibited by Section 8(e) of the Labor Act, 29 U.S.C. Section 158(e).

51.     This Court has jurisdiction over Defendant Carpenters pursuant to Section 301(a) and (c) of the Labor Management Relations Act, as amended, 29 U.S.C. 185(a) and (c), and by virtue of Section 303 of the Labor Management Relations Act, as amended, 29 U.S.C. 187, in that Defendant represents and acts for employee bargaining unit members in the relevant market area, and pursuant to the Clayton Act, 15 U.S.C. 12-27, and the Sherman Act, 15 U.S.C. Sections 1 and 2.

52.     Venue is proper in this District pursuant to 28 U.S.C. Section 1391 and 15 U.S.C. Section 22, insofar as Defendant resides in or conducts business within this District.

## General Facts

53.     Upon information and belief, Defendant has acted in concert and agreement with various general contractors and construction managers (who are not labor organizations) who

conduct business within the relevant market area, to prohibit and preclude the performance of the relevant work and the enforcement of collective bargaining agreements by Plaintiff labor organizations with Plaintiff employer and employer associations.

54.     Upon information and belief, Defendant has acted in concert and agreement with various general contractors and construction managers who are not labor organizations and who conduct business within the relevant market area to change bid packages and scopes of work in an effort to prevent and prohibit Plaintiff labor organization members, Plaintiff pension fund participants, Plaintiff employer association members and Plaintiff employers from effectively bidding the work in question or benefitting from their performance of the work by packaging the scopes of work and bid packages so that only Carpenters may perform the relevant work and so that only employers signatory with the Carpenters can effectively bid the work due to the re-design of bid packages and scopes of work.

55.     These efforts have been made through the inclusion by Defendant, in concert with non-labor entities, of language in Defendant's collective bargaining agreements and other agreements which Defendant now claims require that the relevant work traditionally performed by Plaintiff Iron Workers, Plaintiff Sheet Metal Workers, and Plaintiff Glaziers within the relevant market area, must now be performed exclusively by Carpenters, regardless of who bids the work, and regardless of whether Carpenters have traditionally exclusively performed the work in the relevant market area in the past or not.

56.     There has long been a course of conduct in the relevant market area whereby Iron Workers, Glaziers and Sheet Metal Contractors have bid on, received and performed the relevant work generally referred to as metal siding, exterior siding systems or metal installations.

14

57.     The Carpenters, prior to 2009, had never sought to exclusively bid on, receive or perform the relevant work in the relevant market area. In fact, the collective bargaining agreements entered into by Defendant from 1999 through April 2010, contain no reference to the relevant work.

58.     However, from 2008 to date, Defendant sought to amend its current collective bargaining agreements to reflect that the Carpenters do, in fact, perform the relevant work and to ensure that viable bids may be submitted for such work only by employers, contractors and subcontractors who are signatory to the Carpenters collective bargaining agreement.

59.     By engaging in conspiratorial conduct with general contractors and construction managers signatory to Defendant Carpenters to ensure that traditional scopes of work are altered so that only Carpenters signatory contractors may effectively bid such work and to ensure that traditional bid packages are altered with the same goal, Defendant Carpenters have engaged in conspiratorial and illegal conduct to restrain trade under the antitrust acts.

60.     This attempted amendment of the Defendant's collective bargaining agreements is an effort, in concert with non-labor entities, to restrain trade by prohibiting non-carpenter contractors from bidding for the relevant work, even though said contractors have bid and performed such work in the relevant market area for many years.

61.     Furthermore, this attempted amendment of the Defendant's collective bargaining agreements is an effort to monopolize the relevant work in the relevant market area for the Carpenters, in violation of federal law.

62.     By way of specific example, but not all-inclusive, are the situations described in paragraphs 63 through 94, below.

### 360 State Street Project, New Haven, Connecticut

63.     Suffolk Construction, the construction manager on the 360 State Street Project in New Haven, Connecticut, per an agreement with Defendant, and in conspiracy with Defendant to restrain trade, in violation of the anti-trust laws, originally required contractors to whom work had been awarded, to assign certain relevant work to the New England Regional Council of Carpenters, in spite of area practice and custom. Only after substantial negotiations with one subcontractor was that subcontractor allowed to bid the work without the use of Carpenters and without a composite crew usage of Carpenters.

64.     The 360 State Street Project is an ongoing construction project and the construction manager, to the knowledge and belief of Plaintiffs, has no Carpenters performing bargaining unit work on the job site.

65.     The original Suffolk Construction Company 360 State Street Project scope of work for Glass and Glazing contained language which stated in pertinent part,

> "The subcontractor acknowledges Suffolk Construction Company,
> Inc., has an agreement with the New England Regional Council of
> Carpenters to perform all carpentry related work in New England
> with Union Carpenters. Therefore, all classifications of work
> "claimed" by the New England Regional Council of Carpenters must
> be performed with Union Carpenters. For this Subcontractors Work,
> the parties agree this is limited to interior windows and punched
> windows in the preset panels for which the Subcontractor will agree
> to use a composite crew if this portion of the work is "claimed" by the

16

Carpenters."

66.     Only after an extensive negotiation, was a subcontractor signatory to Plaintiff Glaziers able to negotiate a change in the language described in paragraph 29 above, which change stated:

> "It is understood that this subcontractor may be signatory to one or more of the Local Unions within the area or state in which this project is located.  It is further understood that Suffolk Construction Company, Inc., has an agreement with the New England Regional Council of Carpenters to perform all carpentry work in New England with Union Carpenters.  Therefore, all classifications of work that fall within the scope of work outlined in this subcontract will be assigned to the appropriate Union which demonstrates that it has been awarded, and successfully completed this type of work, on a regular basis, within the state in which this project is located.  If more than one Union can document that it meets the awards and successful completion criteria noted herein, for any portion within the scope of work defined in this subcontract, then this subcontractor agrees to use composite crews for that portion of work only."

67.     The work described above was performed only by Plaintiff Union members.  No Carpenters were used because they were unable to demonstrate that they had successfully completed this type of work, on a regular basis, within the state in which the project was located.

68.     The 360 State Street Project was performed under a Project Labor Agreement with signatory building and construction trades unions, including Plaintiff Unions.  Article III of said Agreement, "Union Recognition and Employment," states that work assignments shall be based on subcontractor preference.  The scope of work as originally proposed by Suffolk Construction Company, in agreement with Defendant, attempted to limit the application of Article III.

69.     There were no Carpenter union member employees performing bargaining unit work on the 360 State Street Project on the job site at the time that Suffolk Construction attempted to require that relevant work be performed only by union Carpenters.

17

**New Rowe Residences, New Haven, Connecticut**

70.     As construction manager, Dimeo Construction, on its Project 957-08, issued a scope of work for "metal siding" dated May 21, 2009. This is work traditionally and historically classified as "Division 7" work, or roofing. Upon information and belief, per an agreement with Defendant, and in conspiracy with Defendant to restrain trade, in violation of the anti-trust laws, Dimeo classified this work as "General Trades" or "Carpenter" work in an effort to guarantee that the Carpenters would be awarded this work. Ultimately, this scope of work was further modified to state, "all work to be completed with Union Carpenters." The aforesaid scope of work, at Paragraph L, states that "Dimeo Construction Company is signatory with the New England Carpenter and Labor Unions." [sic].

71.     Said scope of work is in apparent contradiction to paragraph D18, which states in pertinent part, that "Each trade contractor/subcontractor is responsible for compliance with local jurisdictional trade requirements."

72.     Defendant and Dimeo sought to prevent Plaintiff Iron Worker, Glazier and Sheet Metal Contractors from bidding this work, as a result of the conspiracy with Carpenters to restrain trade and competition, and as a result of the illegal secondary activity by Defendant and certain construction managers and general contractors who have executed a Defendant collective bargaining agreement or other agreements.

73.     As construction manager, Dimeo Construction does not intend to have Carpenter union employees performing bargaining unit work on the job site.

**St. Francis Hospital, Hartford, Connecticut**

74.     Within recent months, Defendant has attempted to coerce the general contractor,

18

Turner Construction, the construction manager on the St. Francis Hospital, Hartford, Connecticut Project, to inform Plaintiff labor organization subcontractors that they cannot bid the relevant work traditionally performed by Plaintiff Sheet Metal Workers, Plaintiff Iron Workers or Plaintiff Glaziers, unless all said work is awarded to Defendant.

75.     Turner Construction is the construction manager on the St. Francis Hospital, Hartford, Connecticut Project, which is an ongoing project, and Turner Construction has had no Carpenters performing bargaining unit work on the project.

76.     The assertion that work traditionally performed by Plaintiff Iron Workers, Plaintiff Sheet Metal Workers and Plaintiff Glaziers must now be performed solely by Defendant in Connecticut, is an attempted restraint of trade in violation of federal law.

77.     The construction manager on this project has no intention of having Carpenter union employees performing bargaining unit work on the job site.

**Bryant University Project, Smithfield, Rhode Island**

78.     By way of example, Bond Brothers, a construction manager on the Bryant University Project signatory to the Carpenters, has included in its "scope checklist" for "glass and glazing," a statement that "Glass/Glazing subcontractors have to be signatory to the NERCC." (New England Regional Council of Carpenters).  This statement was included as a result of a conspiracy by the Carpenters to restrain trade in violation of the anti-trust laws, by prohibiting Plaintiff employers and employer association members from bidding the work unless said Employers become signatory with the Carpenters.

79.     This is work that Plaintiff Iron Worker, Glazier and Sheet Metal Contractors were prohibited from bidding, as a result of the conspiracy between Bond Brothers and the Carpenters to

restrain trade and competition, and as a result of the illegal secondary activity by Defendant and certain construction managers and general contractors who have executed Defendant collective bargaining agreement or other agreements.

80.    The construction manager on this project has no intention of utilizing Carpenter union employees to perform bargaining unit work on the job site.

### Immaculate Conception Catholic Regional School, Cranston, Rhode Island

81.    Plaintiff M.R.S. Enterprise, Inc., was awarded the job to perform relevant work on the Immaculate Conception Catholic Regional School, in Cranston, Rhode Island, by E. Turgeon Construction Corporation, as general contractor.

82.    Attached herewith at Exhibit 1, is a May 14, 2009 letter from E. Turgeon Construction Corporation to Plaintiff M.R.S., terminating the contract, Turgeon stated to Plaintiff M.R.S., that Turgeon "must cancel our contract with you (dated May 12, 2009) for installation of Metal Wall Panels and Composite Wall Panels ..." The only explanation given was that Plaintiff M.R.S. was to have its work done by Union Iron Workers and Sheet Metal Workers, and that Turgeon was prohibited by Rhode Island Carpenters Union Local 94, affiliated with the New England Regional Council of Carpenters, from contracting with Plaintiff M.R.S., because M.R.S. was not signatory to the Carpenters.

83.    This is work that Plaintiff M.R.S. was prohibited from performing, as a result of the conspiracy between Defendant Carpenters and E. Turgeon Construction Corporation to restrain trade and competition, in violation of the anti-trust laws, by cancelling a contract with Plaintiff M.R.S., solely because they were not signatory to Defendant Carpenters and as a result of the illegal secondary activity by Defendant and certain construction managers and general contractors who have

executed Defendant collective bargaining agreements or other agreements.

## Bay State Medical Center Hospital Project, Springfield, Massachusetts

84.     The Bay State Medical Center Hospital Project Labor Agreement was entered into by applicable labor organizations, including some of Plaintiff Unions, and the William A. Berry and Son, Inc., Corporation, as "construction manager." This agreement, dated November 25, 2008, allows subcontractors to appropriately assign all work in question.

85.     A separate Memorandum of Understanding between the construction manager, who had no employees performing the work at issue on the job site, and the New England Regional Council of Carpenters and its affiliated Local 108, designated that certain work was to be performed by Carpenters only, including "the installation of punch windows and the installation of all metal siding." This is in spite of the fact that the Project Labor Agreement states in its preamble, that "No practice, Understanding or Agreement between a contractor and union party which is not explicitly set forth in this Agreement or the Schedule A, shall be binding on any other party unless endorsed by the owner, construction manager and the unions."

86.     The Bay State Medical Center Hospital Project is an ongoing project and the construction manager has had no Carpenters performing bargaining unit work on the project.

87.     This is work that Plaintiffs Iron Workers, Glaziers and Sheet Metal Contractors were prohibited from bidding, as a result of the conspiracy between Carpenters and William A. Berry and Son, Inc., Corporation to restrain trade and competition, in violation of the anti-trust laws, and as a result of the illegal secondary activity by Defendant and certain construction managers and general contractors who have executed Defendant collective bargaining agreement or other agreements.

88.     The construction manager on this project has no intention of having Carpenter union

21

employees performing bargaining unit work on the job site.

## New London, Connecticut Schools Project

89.     The New London, Connecticut Schools Project consists of construction projects for public schools in New London, Connecticut in which Fusco, Inc., of New Haven, Connecticut, is the construction manager.

90.     Originally, the specifications and scopes of work on these projects included the relevant work, as defined in Paragraph 47 herein, in the "Roofing Package." This is work traditionally performed by Plaintiff unions in this area, part of the relevant market area, as defined in Paragraph 48.

91.     As construction manager, Fusco, Inc., redrafted the specifications and scopes of work to exclude the relevant work from the "Roofing Package" and include it in the "General Trades" package, contrary to past practice in the relevant market area, as defined in Paragraph 48 herein.

92.     Contractors who bid the "General Trades" package of a project are generally signatory to the Carpenters, since much of the work in question is carpentry work. By including work that has traditionally been in the "Roofing Package" in the "General Trades" package, effectively, the construction manager, in conspiracy with Defendant Carpenters, has precluded and prohibited Plaintiff labor organization signatory contractors from bidding the work in question, since such contractors are not currently signatory with Defendant Carpenters.

93.     The construction manager on this project has not had Carpenter union employees performing bargaining unit work on the site of the construction.

94.     The conspiratorial conduct of the construction manager and Defendant Carpenters on the New London, Connecticut Schools Project in redesigning the bid packages, constitutes a

restraint of trade conspiracy engaged in by Carpenters and certain of its signatory general contractors and construction managers.

## Plaintiff Labor Organizations' Collective Bargaining Agreements

95.     The current Plaintiff Iron Workers collective bargaining agreement states that relevant work of the type at issue here is within the jurisdiction of Plaintiff Iron Workers.

96.     The current Plaintiff Sheet Metal Workers collective bargaining agreement states that relevant work of the type at issue here is within the jurisdiction of Plaintiff Sheet Metal Workers.

97.     The current Plaintiff Glaziers collective bargaining agreement states that relevant work of the type at issue here is within the jurisdiction of Plaintiff Glaziers.

## New England Regional Council of Carpenters Collective Bargaining Agreements

98.     The New England Regional Council of Carpenters collective bargaining agreement between Carpenters Local Union 94 and the Associated General Contractors of Rhode Island, Inc., effective June 5, 2005, with expiration of June 7, 2009 (the "2005 Rhode Island Carpenter Agreement"), contains no reference to the type of work at issue here.

99.     The New England Regional Council of Carpenters Locals 24, 43 and 210 agreement with the Associated General Contractors and the CCIA Building Contractors of Connecticut, Inc., dated April 1999, with expiration April 30, 2002 (the "1999 Carpenters Connecticut Agreement"), contains no reference to the type of work at issue here.

100.     The collective bargaining agreement between the New England Regional Council of Carpenters and its Locals 23, 43 and 210, and the Associated General Contractors, CCIA Building Contractors of Connecticut, Inc., for building and heavy and highway construction dated May 1, 2002, with expiration April 30, 2006 (the "2002 Carpenters Connecticut Agreement"), contains no

reference to the type of work at issue here.

101.    The collective bargaining agreement between Carpenters Connecticut Agreement Locals 24, 43, 210 and 1121, with the Associated General Contractors of Connecticut and the Connecticut Construction Industries Associated, Inc., for building and heavy and highway construction dated May 1, 2006 to April 30, 2010 (the "Current Carpenters Connecticut Agreement"), contains no reference to the type of work at issue here.

102.    Attached herewith at Exhibit 2, is a 1-page agreement which has been circulated by the New England Regional Council of Carpenters to certain of its signatory contractors, by which Agreement the employer, for the first time "acknowledges that it performs what is known as 'Exterior Building Enclosure Systems work' to include 'exterior siding systems.'" This Agreement has been circulated from 2009 to date. (The "New England Regional Council of Carpenters Exterior System Siding Agreement"). The purpose of this Agreement is to prevent Plaintiff contractors from bidding said work unless they are signatory to an agreement with the Defendant, and deny work to Plaintiff unions and their members, which they have traditionally performed in the relevant market area.  As such, said Agreement is an unlawful restraint of trade.

103.    The Exterior Siding Systems Agreement states in pertinent part, "If the employer fails to assign such work to its Carpenter employees," it shall be liable for damages which shall be measured by the amount of the contract wages and benefits for each hour worked.

104.    The Exterior Sidings Systems Agreement further states in pertinent part that otherwise, "the employer ... agrees to follow area practice when it makes assignments to any other divisions of work they may perform ..."

24

**Recent Activity**

105.    The New England Regional Council of Carpenters has furthermore, since January 2008, coerced its general contractors and construction managers into including in specifications and other documents work assignments for subcontractors, which exclude Plaintiffs Iron Workers, Glaziers and Sheet Metal Workers, and their signatory contractors, and which specifications and other documents are contrary to area practice. Such conduct by Defendant constitutes a conspiracy between the Carpenters and certain of its signatory general contractors and construction managers to restrain trade by prohibiting Plaintiff employers, Plaintiff employer association members and Plaintiff labor association members from effectively bidding, contracting to perform and performing relevant work in the relevant market area through a restraint of trade and in violation of the antitrust laws.

**Recent Correspondence and Statements from the Parties**

106.    Attached herewith as Exhibit 3, is a letter dated November 25, 2009, sent on behalf of Plaintiff Unions to the New England Regional Council of Carpenters asserting violations of federal antitrust and labor laws in their recent contact negotiations, contract addenda negotiations and other actions in conspiracy with area general contractors and construction managers.

107.    Attached hereto as Exhibit 4, is a response, dated December 23, 2009, from counsel for the New England Regional Council of Carpenters, denying any violations of any labor and federal antitrust laws, and asserting their intent to continue their recent practices and actions.

108.    Attached herewith as Exhibit 5, is the response, dated December 31, 2009, of Plaintiffs' counsel to the Carpenters counsel.

## COUNT I

109.    COME NOW Plaintiffs, and for Count I of their Complaint, hereby incorporate and reallege Paragraphs 1-108, herein, as if fully restated.

110.    This conduct constituted a violation of Sections 1 and 2 of the Sherman Act, in that it consisted of an attempt by the Defendant, beyond the statutory labor exemption for activities of labor organizations, in concert and conspiracy with Defendant's signatory general contractors and construction managers, to restrain trade by prohibiting contractors who are not signatory to the Defendant, but are signatory to the Plaintiff Iron Workers, Plaintiff Sheet Metal Workers or Plaintiff Glaziers from bidding, being awarded and performing work which they traditionally have performed with Plaintiff labor organization members and without Defendant members in the relevant market area.

111.    The conduct described above by Defendant is a violation of Sections 1 and 2 of the Sherman Act.  Said conduct is beyond the scope of the labor exemption, in that it consists of labor organization conduct with an employer, including conduct outside the collective bargaining process and otherwise, to expand work jurisdiction to work not traditionally performed by the Defendant in the relevant market area, and therefore, such conduct constitutes a contract in restraint of trade.  Such conduct is furthermore a wrongful exclusionary act by Defendant through its attempts designed to enforce Defendant collective bargaining agreements in a new and expansive manner over Plaintiff Unions' traditional work jurisdiction and their signatory contractors by prohibiting them from bidding and performing work which they have traditionally performed within the relevant market area.

112.    There is no legitimate business purpose to justify the aforesaid anti-competitive

26

conduct in restraint of trade of Defendant.

113.   Plaintiff M.R.S. seeks compensatory damages pursuant to 15 U.S.C. Section 15, and all Plaintiffs seek declaratory relief pursuant to 15 U.S.C. Sections 2201 and 2202.

WHEREFORE, Plaintiffs pray for an Order of this Court declaring that the conduct of Defendant, as described herein, is violative of the Sherman Act, in that said conduct goes beyond the traditional collective bargaining relationship between employer and labor organization and restrains trade by prohibiting and precluding Plaintiff labor organizations, the individual members of Plaintiff employer associations, and Plaintiff employers, from competing in the relevant market area to perform relevant work which they have traditionally performed in the relevant market area; and further declaring such conduct should cease and desist immediately; and for a further Order prohibiting Defendant from engaging in said conduct which has a direct detrimental effect on the funding for future hours worked of Plaintiff's pension funds and which has a direct detrimental effect on Plaintiff employers who contribute to those pension funds by reducing said hours as a result of the implementation of such conspiratorial anti-competitive misconduct and by exposing said employers to withdrawal liability or multiple payment of fringe benefits if said employers are compelled to sign and abide by Defendant interpretation of Defendant collective bargaining agreements; and for a further Order awarding treble damages to Plaintiff M.R.S. Enterprises, Inc., as a result of losses incurred in preparation and awarding of a contract to them from E. Turgeon Construction Corporation, which contract E. Turgeon Construction Corporation was forced to cancel by Defendant; and for its costs incurred herein; for attorneys fees and interest as described in 15 U.S.C., 15, and for such other relief as is deemed appropriate in the premises.

27

## COUNT II

114.    COME NOW Plaintiffs, and for Count II of their Complaint, hereby incorporate and reallege Paragraphs 1-113, herein, as if fully restated.

115.    Defendant, in violation of 29 U.S.C. 187, and in conspiracy with general contractors and construction managers signatory to Defendant, has engaged in conduct in violation of 29 U.S.C. 158(b)(4), which conduct is described above, encourages and induces individuals, including general contractors and construction managers signatory to Defendant, to refrain from engaging in commerce with Plaintiffs by demanding the refusal to enter into contracts or subcontracts on construction projects as described herein, solely for the reason that Plaintiff employers are not signatory to Defendant collective bargaining agreements, but rather, are signatory to Plaintiff Iron Workers, Plaintiff Sheet Metal Workers, and Plaintiff Glaziers collective bargaining agreements, and for no other reason.

116.    By engaging in the conduct described above, Defendant is attempting to force and require the Plaintiff employers and employer associations' employees who are signatory to collective bargaining agreements with Plaintiff labor organizations to enter into agreements with Defendant which do not merely preserve traditional work of Defendant on the job site and do not merely preserve the status quo, but rather, attempt to exclusively expand that work to relevant work traditionally performed by members of Plaintiff labor organizations in the relevant market area.

117.    Plaintiffs assert that Defendant is attempting to compel its signatory general contractors and construction managers to cease using, selling, handling or otherwise dealing with the products and services of Plaintiff employers, members of Plaintiff employer associations, and others, merely because they have entered into collective bargaining agreements in the relevant

market area to perform relevant work with Plaintiff Iron Workers, Plaintiff Sheet Metal Workers, and Plaintiff Glaziers.

118.   The conduct of Defendant, as described above, has an aim, effect and intent of forcing or requiring general contractors and construction managers who are signatory to collective bargaining agreements with Defendant to refuse to enter subcontracts with contractors signatory to Plaintiff labor organizations, with Plaintiff employers and with employers affiliated with Plaintiff employer associations, solely because another labor organization or labor organizations is the exclusive representative of certain of the employees of such contractor or contractors.

119.   The actions and conduct of Defendant have the aim, intent and effect of forcing or requiring Plaintiff employers who have collective bargaining agreements with Plaintiff organizations to exclusively assign work to employees in Defendant labor organization, to the exclusion of assigning such work to members of Plaintiff labor organizations.

120.   The subcontracting clauses of Defendant collective bargaining agreements, as interpreted recently by Defendant, are not limited to work on specific construction sites where Defendant Carpenter members are working, and are not limited to work on the construction site where Defendant Carpenters are working in the relevant market area, but rather, are an attempt by Defendant labor organization to contractually extend its exclusive representation to employees performing work which it has not traditionally performed in the relevant market area on sites where no Defendant Carpenter members are performing bargaining unit work.

WHEREFORE, Plaintiff M.R.S. prays for its actual damages incurred herein, for loss of the contract at the Immaculate Conception Catholic Regional School Project, plus interest from the date of service of this Complaint and furthermore, all Plaintiffs pray for declaratory relief declaring that

Defendant labor organizations may no longer attempt to compel or coerce its employers to interpret any subcontracting clause or other agreement, to award the relevant work in the relevant market area only to Defendant or its related entities; and Plaintiffs, and each of them pray for their actual damages and costs incurred herein and for such other remedies as are deemed just in the premises.

Respectfully submitted,

SIEGEL O'CONNOR

_____
RICHARD D. O'CONNOR, No.
150 Trumbull Street, 5th Floor
Hartford, Connecticut 06103
Phone:         860-727-8900
Fax:           860-527-5131
E-mail:        roconnor@siegeloconnor.com

Attorney for Plaintiff Employers and Employer Associations

LIVINGSTON, ADLER, PULDA,
MEIKLEJOHN AND KELLY, P.C.

_____
THOMAS W. MEIKLEJOHN, No. Ct08755
557 Prospect Avenue
Hartford, Connecticut 06105-2922
Telephone:     860-233-9821
Facsimile:     860-232-7818
E-Mail:        twmeiklejohn@lapm.org

Attorney for Plaintiff Labor Organizations

BARTLEY GOFFSTEIN, L.L.C.


RONALD C. GLADNEY, No. 3217 EDMO
PAUL C. HETTERMAN, No. 3393 EDMO
4399 Laclede Avenue
St. Louis, Missouri 63108
Telephone:    314-531-1054
Facsimile:    314-531-1131
E-Mail:       rgladney@bgbllaw.com

Attorneys for Plaintiffs


F:\Users\Elaine\Federal\Iron Workers International\New England Regional Council of Carpenters\Complaint [ w PCH changes 2-2-10].wpd\Elaine



May 14, 2009

Mr. David Lemoine
Vice President
MRS Enterprise, Inc.
41 Northwest Drive
Plainville, CT 06062

Re:   CONTRACT CANCELLATION
      Immaculate Conception Catholic Regional School
      *CRANSTON, RI*

Dear Dave,

Per our telephone conversation this afternoon, the E. Turgeon Construction Corporation must cancel our contract with you (dated May 12, 2009) for installation of Metal Wall Panels and Composite Wall Panels at the Immaculate Conception Catholic Regional School Project located in Cranston, Rhode Island.

The E. Turgeon Construction Corporation is signatory to the Rhode Island Carpenter's Union Local 94. Unbeknownst to me prior to issuing this contract to you, under agreements with this union, the installation of Metal Wall Panels and Composite Wall Panels falls within their scope of work. Therefore, considering the fact that MRS Enterprise, Inc.'s installation of these panels was to be with iron and sheet metal workers, the E. Turgeon Construction Corporation cannot employ your company.

While we certainly appreciate the time and effort both companies have extended during the pre-contract process, we ask that you please respect our agreement with Local 94 and understand our position.

Should you have any questions, please do not hesitate to contact me to discuss.

Thank you.

Sincerely,

Christopher F. Ducharme
Treasurer



EXHIBIT

1

# MEMORANDUM OF UNDERSTANDING

## BETWEEN

## WILLIAM A. BERRY & SON, INC.

## AND

## NEW ENGLAND REGIONAL COUNCIL OF
## CARPENTERS LOCAL 108

William A. Berry & Son, Inc. (Berry) and New England Regional Council of Carpenters Local 108 (Local 108) hereby enter into this Memorandum of Understanding that shall govern the work assignments contained herein on the Baystate Medical Center Project of Berry.

Berry and Local 108 acknowledge that they are signatory to a collective bargaining agreement whose terms and conditions govern carpenters work in the western Massachusetts area. In recognition of its contractual obligations with Local 108, Berry agrees that the following work to be performed at the Baystate Medical Center Project is governed by the Local 108 Agreement and will be performed by Carpenters:

1. The installation of "punch" windows including windows designated "store front' that are installed in a punched opening.

2. The erection of all scaffolding, including masonry staging, with laborers tending;

3. The installation of all doors including those that contain lead utilized in X-ray and CT scan rooms.

4. The nailer board typically utilized in a composite metal panel roof system and the installation of all roof blocking.

5. The installation of all lockers and toilet partitions made of any kind of material.



EXHIBIT
2

LAW OFFICES

BARTLEY GOFFSTEIN, L.L.C.

JOHN H. GOFFSTEIN
GARY H. LANGE *
JEFFREY E. HARTNETT
RONALD C. GLADNEY
PAUL C. HETTERMAN *
JAMES R. KIMMEY
JAMIE L. REYES-JONES
JAMES P. FAUL*

ATTORNEYS AND COUNSELORS
4399 LACLEDE AVENUE
ST. LOUIS, MISSOURI 63108
314-531-1054
Fax 314-531-1131
————————————————
1750 New York Avenue, N.W., Suite 130
Washington, D.C. 20006

www.bartleygoffstein.com

WILLIAM H. BARTLEY 1937 - 2004
JEROME T. BOLLATO, Ret.

* ALSO LICENSED IN ILLINOIS

PLEASE RESPOND TO ST. LOUIS OFFICE

November 25, 2009

Christopher N. Souris, Esq.
225 Friend Street
Boston, MA 02114

Re:   **Illegal Coercion Pertaining to Work Assignments on Construction Projects in New England**

Dear Mr. Souris:

Enclosed herewith please find a copy of a draft Complaint, the final form of which we currently intend to file thirty (30) days after the date of this letter, unless the New England Regional Council of Carpenters (the "Carpenters") agrees to withdraw its demands to, through expansion of jurisdictional clauses, extension of subcontracting clauses, and other anti-competitive conduct and conspiracy with general contractors and subcontractors, exclude Plaintiff labor organization members and Plaintiff employers from performing relevant work which they have traditionally performed in the relevant market area.

The Carpenters' conduct in expanding the interpretation of subcontracting clauses, expanding jurisdictional clauses and conspiring with general contractors and construction managers to draft scopes of work and specifications which would prohibit competition for the relevant work described in the Complaint is a violation of the Sherman Antitrust Act. Such conduct seeks to restrain and limit trade to certain entities and to provide the Carpenters with a monopoly on performance of the relevant work.

Inasmuch as the unlawful agreement is with a non-labor entity, the agreement is not entitled to the protection of the statutory exemption to the antitrust laws. *Clarett v. National Football League*, 369 F.3d 124 (2nd Cir. 2004).

We anticipate your client will contend that its conduct is protected by the non-statutory exemption to the antitrust laws. This is, of course, an affirmative defense on which your client will carry the burden of proof and persuasion. *American Steel Erectors, Inc. v. Local Union No. 7*, 536 F.3d 68 (1st Cir. 2008).

We further anticipate that you will rely upon the construction industry proviso of Section 8(e) of the NLRA to support your defense of the non-statutory exemption to the antitrust laws.

While the availability of the proviso would be helpful to your client, the antitrust analysis would not end there. *U.S. Information Systems, Inc. v. International Brotherhood of Electrical Workers, Drywall Tapers and Pointers of Greater New York, Local Union 1974 v. Bobis Lend Lease Interiors, Inc.*, 2005 WL2205836 (ED N.Y. 2005).

However, the construction industry proviso does not apply here. The proviso was intended to protect established industry practices relating to the subcontracting of work to be performed at the site of construction.

EXHIBIT

3

Christopher N. Souris, Esq.
November 25, 2009
Page 2

By its language, the exemption only applies to on-site work. The exemption furthermore is directed to preserve work traditionally performed by the signatory contractor and labor organization, and is limited to work contracted to be performed by the contractor on the site of the specific construction. The Carpenters are attempting to expand their work jurisdiction through conduct and contract provision interpretation described above to work not being performed by the contractor on the site of the construction and to work not traditionally performed by Carpenters in the relevant market area. *Sheet Metal Division of Capital District Sheet Metal, Roofing and Air Conditioning Contractors Association v. Local Union 38*, 45 F. Supp.2d 195 (ND N.Y. 1999).

The purpose of the exemption was to maintain the status quo as to the legality of established construction industry practices, not to permit an expansion of those practices.

While subcontracting clauses intending to protect union work were recognized as legal before the adoption of Section 8(e), and then exempted by the construction industry proviso from the terms of Section 8(e), said protection does not encompass attempts by one union to expand "its scope of work" into areas generally considered to be the work of other trades, so as to monopolize said work and prevent competition from non-carpenter employers and trades.

Without the protection of the construction industry provision, the efforts of your client are a clear violation of 8(e) and Sections 1 and 2 of the Sherman Anti-trust Act.

Additionally, the Carpenters' conduct places Plaintiff contractors in an untenable position. Were the Carpenters to succeed in their goals and coerce these contractors into becoming signatory to the Carpenters and into performing work traditionally performed by participants only with Carpenters, then Plaintiff contractors would be exposed to withdrawal liability under the Employee Retirement Income Security Act. 29 U.S.C. 1383(b) and 29 U.S.C. 1381 define a withdrawal by a contributing employer in the building and construction industry to be a cessation of contributions to a pension fund when that employer resumes the performance of previously covered work within five years. A partial withdrawal occurs if there is a 70% or more contribution decline. Plaintiff pension funds, along with many pension funds in the country, are underfunded in substantial part, as a result of the economic collapse of last year. To compel Plaintiff employers to hire only Carpenters for work traditionally performed by Plaintiff labor organizations would further deplete the anticipated funding of Plaintiff pension funds, and, on an employer-by-employer basis, would expose Plaintiff employers and members of Plaintiff employer associations to extremely large withdrawal obligations to Plaintiff pension funds. Furthermore, plaintiff pension funds themselves would suffer serious reductions in contributions as a result of the Carpenters' conduct.

We await your consideration and response to this correspondence prior to the filing of the attached litigation. The attached Complaint is a draft only and Plaintiffs may be added or subtracted. However, we feel this Complaint affords you adequate opportunity to consider the parameters of our assertions.

We furthermore anticipate that, if litigation is necessary, you will accept service on behalf of Defendant. If this is not the case, please advise.

Very truly yours,

RONALD C. GLADNEY
PAUL C. HETTERMAN

RCG/PCH:eb
Enclosure

F:\Users\Elaine\Gladney\IRON WORKERS\International Iron Workers\New England Council of Carpenters Local 15 Dimeo\Souris Letter 10-26-09.PCH.wpd\Elaine

Dec 23 2009 10:05AM   Krakow&Souris          6177238440                  P.1

# KRAKOW & SOURIS, LLC

### ATTORNEYS AT LAW
### 225 FRIEND STREET
### BOSTON, MASSACHUSETTS 02114

AARON D. KRAKOW
CHRISTOPHER N. SOURIS*

MICHAEL F. WALSH
OF COUNSEL

*ALSO ADMITTED IN NEW YORK

TELEPHONE (617) 723-8440
TELECOPIER (617) 723-8443
TOLL FREE (888) 628-8200

December 23, 2009

Ronald C. Gladney
Bartley Goffstein, LLC
4399 Laclede Avenue
St. Louis, MO 63108

RE:     Enforcement of Subcontracting Clause

Dear Mr. Gladney:

Thank you for your response to my letter of September 21, 2009.

I note, however, that despite my request for authorities for your suggestion that the normal rules governing enforcement of subcontracting clauses somehow do not apply to the Council's enforcement of its clause, you failed to do so. The only case you cited concerning the merits of the claim, the federal district court's decision in the *Local 38* case, did not even remotely suggest that the construction industry proviso to Section 8(e) has anything to do with the question of whether work subject to a subcontracting clause is "work traditionally performed" by any employer or union. In addition, the case was actually *reversed* by the Court of Appeals.

Under these circumstances, I must note that each of your clients faces the imposition of sanctions under Rule 11 if they proceed with this case. And the various fringe benefit Funds' claims and alleged injuries are so attenuated that they raise questions about how the Funds could participate in litigation of this type consistent with their Trustees' fiduciary duties.

In any event, as I noted in my September 21 letter, the normal rule is that a construction industry union's enforcement of its subcontracting clause is entirely lawful under both federal labor law and the antitrust laws. Since you have provided no authorities at all to the contrary in this case, the New England Regional Council of Carpenters has no choice but to decline your clients' request. Do not hesitate to let me know if you have any additional information.

EXHIBIT

4

Ronald C. Gladney
December 23, 2009
Page 2


Thank you for your attention to this matter.

Very truly yours,

Christopher N. Souris

CNS:me
C:    Mark Erlich
       Richard D. O'Connor
       Thomas W. Meiklejohn

LAW OFFICES

## BARTLEY GOFFSTEIN, L.L.C.

JOHN H. GOFFSTEIN
GARY H. LANGE *
JEFFREY E. HARTNETT
RONALD C. GLADNEY
PAUL C. HETTERMAN *
JAMES R. KIMMEY
JAMIE L. REYES-JONES
JAMES P. FAUL*

ATTORNEYS AND COUNSELORS
4399 LACLEDE AVENUE
ST. LOUIS, MISSOURI 63108
314-531-1054
Fax 314-531-1131

1750 New York Avenue, N.W., Suite 130
Washington, D.C. 20006

www.bartleygoffstein.com

WILLIAM H. BARTLEY 1937 - 2004
JEROME T. BOLLATO, Ret.

* ALSO LICENSED IN ILLINOIS

PLEASE RESPOND TO ST. LOUIS OFFICE

December 31, 2009

Christopher N. Souris, Esq.
225 Friend Street
Boston, MA 02114

Re:   **Illegal Coercion Pertaining to Work Assignments on Construction Projects in New England**

Dear Mr. Souris:

We are in receipt of your December 23, 2009 correspondence. While you narrowly refer to the subject of that correspondence as "enforcement of subcontracting clause," as you are aware, our draft Complaint goes far beyond a subcontracting clause issue. Furthermore, your reference to the Local 38 case being reversed at the Court of Appeals does not address the fact that the reversal was on evidentiary grounds, and that the Court, in fact, agreed that a Section 8(e) analysis involves an analysis of whether the "Union's objective was preservation of work for the (primary employer's) employees, or whether the agreements and boycott were tactically calculated to satisfy Union objectives elsewhere ... The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer *vis a vis* his own employees." Sheet Metal Division of Capitol District Sheet Metal, Roofing and Air Conditioning Contractors Association, Inc. v. Local 38 of the Sheet Metal Workers International Association, 208 F.3d 18 at 22 (2nd Cir., 2000). As the Court noted in this case, the issue is, therefore, whether a mandatory subject of bargaining involving work preservation on the job site is involved. The issue was remanded to the District Court for the sole purpose of expanding the record, the Court having held that the current "record was insufficient to support a declaratory judgment ... we therefore remand this case for further proceedings." 208 F.3d at 27.

The reason for the reversal had nothing to do with the District Court's legal conclusions, but rather, solely dealt with the lack of sufficient evidence to support the Court's decision. Furthermore, the Court noted, contrary to your conclusion, that Defendants had traditionally performed the work in question in the relevant market area. 208 F.3d at 24. The fact situation with which we are dealing does not involve a mandatory subject of bargaining. The New England Regional District Council of Carpenters ("Carpenters") has attempted to acquire work which is not specifically covered by their current collective bargaining agreement through an expansive application of their subcontracting clause. The relevant work at issue is not defined in applicable Carpenters collective bargaining agreements in the relevant market area. Nevertheless, the Carpenters have attempted to use this clause to claim work that they have traditionally not performed, that is not described in the multi-page jurisdictional language of their current Collective bargaining agreements, and that involves work on job sites for which their contractors have no employees performing bargaining unit work.



EXHIBIT
5

Christopher N. Souris, Esq.
February 2, 2010
Page 2

Your conclusion that the fringe benefit funds' claims are attenuated is furthermore flawed. If your client achieves its objectives, those contractors who provide work primarily of the nature described in the draft Complaint, will be severely affected and exposed to withdrawal liability. The fiduciary obligations of fund trustees in this regard are clear.

Finally, and perhaps most importantly, while you conveniently look at the subcontracting issues involved, the draft Complaint is replete with allegations far beyond the subcontracting clause. First of all, many of the specific fact situations involve construction managers who had no Carpenter bargaining unit employees on the site of the construction. Secondly, the activities of your client go far beyond negotiation of a valid subcontracting clause, and extend to efforts to change bid packages and scopes of work in specifications, as well as attempting to apply a subcontracting clause to situations not involving Carpenter work on the job site. This conduct is subject to the scrutiny of the antitrust laws.

We regret your conclusion to the contrary, but are left with no choice, except to forward to our clients our recommendation that they proceed with litigation in the New Year. We are still willing to discuss this matter prior to initiating litigation, but anticipate commencing litigation in January of 2010. We understand based on your lack of response to our inquiry in your subsequent correspondence, that you will accept service.

Very truly yours,

RONALD C. GLADNEY
PAUL C. HETTERMAN

RCG:eb