**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

Connecticut Ironworkers Employers Assoc.,
et al.,

      Plaintiffs,

       v.

New England Regional Council of
Carpenters,

      Defendant.

No. 3:10cv165 (SRU)

## RULING AND ORDER ON MOTION TO DISMISS

This case arises out of the negotiation and enforcement of a union signatory subcontracting clause in the New England Regional Council of Carpenters' ("Council of Carpenters") collective bargaining agreements ("agreements") with non-party construction companies and construction managers ("construction employers"). Plaintiffs allege that the Council of Carpenters attempted to and has successfully prevented plaintiffs from bidding on, being awarded, benefitting from and performing construction work typically performed by the plaintiff union organizations. The union signatory subcontracting clause in the agreements broadens the scope of work that must be allocated to the Council of Carpenters' members ("Carpenters") in a manner that excludes signatories of the plaintiff unions from competing for work even though the construction employers do not currently employ or intend to employ Carpenters on the job sites at issue.

For example, plaintiffs allege that Fusco, Inc., the construction manager on a New London school project, entered into an agreement with the Council of Carpenters that shifts relevant work traditionally performed by the members of plaintiff unions to the "general trades" category. Carpenters typically perform "general trades" work. Accordingly, Carpenters can now "claim" work on the job site and plaintiff employers can no longer bid on the work traditionally

performed by its signatory plaintiff unions.   The use of a union signatory subcontracting clause to give a particular union a monopoly in a particular market is not necessarily unlawful. Plaintiffs allege that, because there are no Carpenters performing bargaining unit work on the disputed job sites, there can be no legitimate business purpose for the exclusion of the plaintiff organizations/employers. The exclusion of plaintiffs from the marketplace absent a legitimate business justification, plaintiffs contend, constitutes a restraint on trade in violation of sections 1 and 2 of the Sherman Act and a violation of labor laws.

Defendant counters that this is nothing more than a jurisdictional dispute between labor organizations, and that its union signatory subcontracting clause is lawful and expressly permitted by the National Labor Relations Act ("NLRA") and the non-statutory labor exemption to the antitrust laws.  Although courts generally accept that a certain amount of anti-competitive conduct will occur in the labor organization arena, not every anti-competitive act is protected by the NLRA or the labor exemption to the antitrust laws.  Accepting the allegations in the complaint as true, the agreements between the Council of Carpenters and the construction employers are not true collective bargaining agreements because those agreements do not embody a desire to set the terms and working conditions of Carpenters working on the identified job sites.   Accordingly, the agreements are not axiomatically either exempt from scrutiny under the NLRA or subject to the antitrust labor exemption.  For the following reasons, the Council of Carpenters' motion to dismiss (doc. # 17) is granted in part and denied in part.

## I.    Background

The facts relied on in this ruling are drawn from the complaint.  For present purposes, I accept the material allegations of the complaint as true and draw all reasonable inferences in

favor of the plaintiffs.

A.  The Parties

1.  *Defendant*

The Council of Carpenters is a labor organization that engages in organized labor activities in the New England region.  The Council of Carpenters has entered into collective bargaining agreements with non-party general contractors and construction companies including Suffolk Construction, Fusco Co., Dimeo Construction, Bond Brothers, Turgeon Construction Co., and Berry & Son.

2.  *Plaintiff Employer Association Parties*

Connecticut Ironworkers Employers Assoc., Inc. is a Connecticut corporation that engages in collective bargaining on behalf of employers who do business with various labor organizations, including plaintiff labor organizations.

Associated Sheet Metal and Roofing Contractors of Connecticut, Inc. ("Sheet Metal Contractors") is a Connecticut corporation that engages in collective bargaining on behalf of member employers and with Plaintiff Sheet Metal Workers Local Unions concerning relevant work.

3.  *Plaintiff Employer Parties*

M.R.S. Enterprises ("M.R.S.") is a Connecticut corporation that employs plaintiff union members in the relevant market area and negotiates collective bargaining agreements with plaintiff unions.

Barrett, Inc. ("Barrett") is a Connecticut corporation that performs relevant work within the relevant market area and employs Sheet Metal Workers union members.

Ernest Peterson ("Peterson") and Berlin Steel Construction Co. ("Berlin Steel") are Connecticut corporations that perform relevant work in the relevant market area and employ plaintiff union organizations' members.

4.  *Plaintiff Pension Fund Parties*

Sheet Metal Workers' Local No. 40 Pension Fund ("Local 40 Fund"), a defined benefit pension plan under ERISA, is comprised of members of the Sheet Metal Worker's Local No. 40 whose members perform relevant work in the relevant market area.  Local 40 Fund is not permitted to carry a "funding standard account deficiency" at the end of its 13-year rehabilitation.  If employers who are signatories to the Local 40 Fund are forced to allocate work to non-members of Local 40, the pension fund will be underfunded and may trigger withdrawal liability that would jeopardize the pension rights of the participants.

Iron Workers' Local Nos. 15 and 424 Pension Funds ("Local 15 Fund" and "Local 424 Fund") are defined benefit pension plans under ERISA and are comprised of members of The International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Local Nos. 15 and 424 ("Locals 15 and 424").  The members of Locals 15 and 424 perform relevant work in the relevant market area.  The plaintiff Pension Funds are also subject to funding requirements as well and their signatory employers also risk the triggering of withdrawal liability in the event of a funding deficiency.

Contributions to the plaintiff Pension Funds are based on a fixed sum per hour worked. If plaintiff employers and labor union organization members are frozen out of relevant work then plaintiff employers, union organization members, and employer associations will face increased pension contributions to compensate for the reduction of hours performed by union members.  In

- 4 -

some instances the plaintiff employers who are forced to hire Carpenters may be exposed to double payments if the plaintiff employers are required to fund plaintiff pension funds as well as benefit funds for defendant Carpenters.

5.  *Plaintiff Labor Organization Parties*[1]

The plaintiff labor organization parties (collectively "the unions" or "union plaintiffs" or "union members") are comprised of the following organizations: The International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Local Nos. 15, 37 and 424; Sheet Metal Workers' Local Nos. 38 and 40; Painters, Drywall Finishers, Glaziers and Allied Trades District Council 11 of the International Union of Painters and Allied Trades ("IUPAT"), AFL-CIO; IUPAT Glaziers Locals No. 1331 and 1274.   Each is an unincorporated association and labor organization that engages in collective bargaining and enforcement of collective bargaining agreements with signatory employers on behalf of its members.

B.  Relevant Work and Market Area

The "relevant work" at issue in the case includes: exterior building enclosure systems such as exterior metal panels, composite wall panels, foam panels, and insulated panel systems; exterior panelized window systems, punched windows, curtain walls, store fronts; and metal roofing systems and related components.   The relevant work typically falls within the jurisdiction

---

[1] Several of the plaintiffs are unincorporated associations and labor organizations within the meaning of 29 U.S.C. § 152(5).  Section 152(5) defines a labor organization as:  "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

of Iron Workers, Glaziers, and Sheet Metal Workers, but not Carpenters.  The "relevant market area" is Connecticut, Rhode Island, and Western Massachusetts.

C.  Facts Alleged in the Complaint

The Council of Carpenters negotiated a union signatory subcontracting clause into certain agreements with construction employers that barred signatories to those agreements from subcontracting work to any firm that is not also a signatory of the Council of Carpenters.  The agreements, characterized as collective bargaining agreements, do not concern job sites at which Carpenters perform relevant work.  The Council of Carpenters enforces the union signatory subcontracting clause of the agreements to the exclusion of the plaintiff labor organizations, who cannot perform relevant work; plaintiff employers, who cannot bid on relevant work; and the remaining plaintiffs, who cannot benefit from the performance of such work.  The language of the union signatory subcontracting clause requires that relevant work traditionally performed by Iron Workers, Sheet Metal Workers, and Glaziers within the relevant market area be performed by Carpenters regardless of who bid the work.  This arrangement, plaintiffs argue, conflicts with the traditional course of conduct in the relevant market area.  Traditionally, relevant work such as metal siding, exterior siding systems, or metal installations was performed by Iron Workers, Sheet Metal Contractors, and Glaziers.

Prior to 2009, the Council of Carpenters had never sought to bid on or perform relevant work, and the collective bargaining agreements entered into by the Council of Carpenters from 1999 through April 2010 do not claim the relevant work.   Since 2008, however, the Council of Carpenters has sought to amend its current agreements to broaden the scope of work claimed by the Council of Carpenters to include relevant work traditionally performed by plaintiff union

organizations.   In doing so, the union signatory subcontracting clause of the agreements prohibits its signatories from hiring subcontractors to perform relevant work who are not also signatories with the Council of Carpenters.  The above-described conduct is aimed at monopolizing the relevant work in the relevant market area to the exclusion of the plaintiff employers and plaintiff union organizations.

The exclusion of plaintiff employers and union organizations serves no legitimate business justification because, as six of the seven specific examples set forth in the Complaint demonstrate, Carpenters do not actually perform relevant work on the job sites covered by the union signatory subcontracting clause.  The plaintiffs identify the following examples:

1.  *360 State Street Project, New Haven, Connecticut*

The State Street Project was performed under a Project Labor Agreement.  Plaintiff unions were party to the agreement.  Article III of the Agreement stated that work assignments shall be based on subcontractor preference.  Although Carpenters were not performing bargaining unit work at the job site, Suffolk Construction, the construction manager on the site, had an agreement with the Council of Carpenters that only the Council of Carpenters' signatories could perform relevant work on the job site.  One subcontractor, after lengthy negotiation, was permitted to perform work claimed by Glaziers with members of Glaziers even though that subcontractor did not have an agreement with the Council of Carpenters.

2.  *New Rowe Residences, New Haven, Connecticut*

The Council of Carpenters worked in concert with Dimeo Construction, construction manager on the project, to assign metal siding work (traditionally defined as "Division 7" work) to Carpenters.  By reclassifying the work as "General Trades" or "Carpenters" and stating that

"all work to be completed with Union Carpenters," the parties prevented plaintiff employers and signatories to plaintiff unions from bidding on the work.  The agreement to reserve relevant work for Carpenters does not serve a legitimate business purpose because Dimeo does not intend to have Carpenters perform bargaining unit work on the job site.

   3.  *St. Francis Hospital, Hartford, Connecticut*

Turner Construction is the construction manager for the St. Francis Hospital, Hartford, Connecticut project.  No Carpenters are performing bargaining work at the job site.  The Council of Carpenters, nonetheless, attempted to coerce Turner Construction into telling plaintiff employers that they cannot bid the relevant work unless all work is awarded to Carpenters.  Turner did not acquiesce to the pressure.

   4.  *Bryant University Project, Smithfield, Rhode Island*

Bond Brothers, the construction manager at the Bryant University Project in Smithfield, Rhode Island, is a signatory to the Council of Carpenters.  Bond Brothers has included in its "scope checklist" for "glass and glazing" (relevant work) that all glass/glazing subcontractors must also be signatories to the Council of Carpenters.  Accordingly, plaintiff employers and/or signatories to plaintiff unions were prohibited from bidding on the job even though the construction manager had no intention of using Carpenters to perform the relevant work.

   5.  *Immaculate Conception Catholic Regional School, Cranston, Rhode Island*

M.R.S. was awarded a contract to perform relevant work on the job site.  E. Turgeon ("Turgeon") was the general contractor.  On May 14, 2009, Turgeon sent a letter to M.R.S. notifying it that the contract would be cancelled because M.R.S. intended relevant work to be performed by plaintiff union members and that Turgeon had an exclusive relationship with the

Council of Carpenters and M.R.S. was not a signatory to the Council of Carpenters.

6.  *Bay State Medical Center Hospital Project, Springfield, Massachusetts*

The project was governed by a Project Labor Agreement.  Plaintiff unions and construction manager, Berry & Son, Inc., were party to the Project Labor Agreement, which provided that subcontractors would appropriately assign all work in question.  Nonetheless, a separate memorandum of understanding between Berry & Son and the Council of Carpenters stated that certain work would be performed only by Carpenters, including work traditionally performed by Glaziers.  The memorandum of understanding violated the terms of the Project Labor Agreement.  Carpenters are not, however, performing any bargaining unit work on the project and Berry & Son does not intend for Carpenters to perform work on the job site. Plaintiff unions and employers were not permitted to bid on the project because of the agreement between Berry & Son and the Council of Carpenters, notwithstanding the Project Labor Agreement.

7.  *Schools Project, New London, Connecticut*

Fusco, Inc. is the construction manager on the job site.  Originally the scope of work on the project included relevant work, which is traditionally performed by plaintiff unions.  Fusco redrafted the specifications and scope of work to include a "General Trades" category.  Fusco reclassified the "Roofing Package" as work included in "General Trades."  Signatories of the Council of Carpenters traditionally bid on General Trades work.  The effect of the change was to preclude plaintiff labor organizations and their signatory contractors from bidding the work in question.  Fusco, however, does not have Carpenters performing bargaining unit work on the site.

D. <u>Counts One and Two</u>

In count one of the complaint, plaintiffs allege that the conduct set forth above constitutes a violation of sections 1 and 2 of the Sherman Act.  The complaint alleges that the Council of Carpenters, in concert with its signatories, has attempted to restrain trade by prohibiting contractors unaffiliated with the Council of Carpenters from bidding, being awarded, and performing work traditionally performed by plaintiff union members.  That conduct, plaintiffs allege, exceeds that allowed by the labor exemptions in that it consists of an agreement between a labor organization and an employer that serves no legitimate business purpose and, although characterized as done pursuant to a collective bargaining agreement, is outside the collective bargaining process.  Plaintiffs also claim that the agreements at issue are designed to expand the Council of Carpenters' jurisdiction and restrict the jurisdiction of plaintiffs.  All plaintiffs seek declaratory relief and M.R.S. seeks damages.

In count two, M.R.S. alleges a violation of 29 U.S.C. § 187, which sets forth that "[i]t shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title."[2]  M.R.S. alleges that the Council of Carpenters has engaged in conduct that encourages and induces individuals, including general contractors and construction managers affiliated with the Council of Carpenters, to refrain from engaging in commerce with plaintiffs.  In doing so, the Council of Carpenters is attempting to force M.R.S.

---

[2] Initially, count two was brought on behalf of all plaintiffs.  Plaintiffs have conceded that only M.R.S. has standing to pursue the claims alleged in count two.  Doc. # 23 at 25.  Accordingly, count two is dismissed with respect to all plaintiffs except M.R.S.

to enter into an agreement with the Council of Carpenters or accept being frozen out of the bidding process.  M.R.S. seeks actual damages for the loss of the Immaculate Conception Catholic Regional School Project.

## II.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief.  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  *Plausibility* at the pleading stage

is nonetheless distinct from *probability*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted).

Defendant also moves to dismiss the claims of the plaintiff union and pension funds for lack of standing.  The party who seeks to exercise the jurisdiction of the court bears the burden of establishing the court's jurisdiction.  *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).  To survive a Rule 12(b)(1) motion, a plaintiff must clearly allege facts demonstrating that the plaintiff is a proper party to invoke judicial resolution of the dispute.  *Id*.  Although the plaintiff bears the ultimate burden of establishing jurisdiction by a preponderance of the evidence, "until discovery takes place, a plaintiff is required only to make a prima facie showing by pleadings and affidavits that jurisdiction exists."  *Koehler v. Bank of Bermuda*, 101 F.3d 863, 865 (2d Cir. 1996).  "When considering a party's standing, we 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'"  *Thompson*, 15 F.3d at 249 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  If a plaintiff has failed to allege facts supportive of standing, it is within the court's discretion to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of standing.  *Id*.

## III.    Discussion

Council of Carpenters moves to dismiss the complaint for failure to state a claim for violations of sections 1 and 2 of the Sherman Act.  As a general rule, agreements to refrain from dealing with others, such as the union signatory subcontracting clause at issue here, are "vulnerable to challenge under federal antitrust laws unless they are protected by both the

construction industry proviso and by an exemption from antitrust scrutiny." *Local 210,*

*Laborer's Intern. Union of North America v. Labor Relations Division Assoc. General*

*Contractors of America, N.Y.S. Chapter, Inc.,* 844 F.2d 69, 73 (2d Cir. 1988).   The Council of

Carpenters contends that the Construction Industry Proviso of section 8(e) of the NLRA and the

non-statutory labor exemption to the antitrust laws permit defendant to enter into the challenged

union signatory subcontracting clause.  Defendant further claims that plaintiffs fail to meet the

requirements of *Twombly* and *Iqbal* in pleading an antitrust claim and that the union and pension

fund plaintiffs lack standing to bring their claims.  Before considering the adequacy of the

pleadings, I address the application of the construction industry proviso and non-statutory labor

exemption from the antitrust laws to the union signatory subcontracting clause.

A.   The Construction Industry Proviso

In 1959, Congress enacted the Landrum-Griffin amendments to the NLRA.  The

amendments included section 8(e), codified at 29 U.S.C. §158(e), and commonly referred to as

the "hot-cargo" provision, which provides:

> It shall be an unfair labor practice for any labor organization and any employer to
> enter into any contract or agreement, express or implied, whereby such employer
> ceases or refrains or agrees to cease or refrain from handling, using, selling,
> transporting or otherwise dealing in any of the products of any other employer, or
> to cease doing business with any other person, and any contract or agreement
> entered into heretofore or hereafter containing such an agreement shall be to such
> extent unenforceable and void: ***Provided*, That nothing in this subsection shall
> apply to an agreement between a labor organization and an employer in the
> construction industry relating to the contracting or subcontracting of work
> to be done at the site of the construction, alteration, painting, or repair of a
> building, structure, or other work:** *Provided further*, That for the purposes of
> this subsection and subsection (b)(4)(B) of this section the terms "any employer",
> "any person engaged in commerce or an industry affecting commerce", and "any
> person" when used in relation to the terms "any other producer, processor, or
> manufacturer", "any other employer", or "any other person" shall not include

> persons in the relation of a jobber, manufacturer, contractor, or subcontractor
> working on the goods or premises of the jobber or manufacturer or performing
> parts of an integrated process of production in the apparel and clothing industry:
> *Provided further*, That nothing in this subchapter shall prohibit the enforcement of
> any agreement which is within the foregoing exception.

(emphasis in bold added).   The bolded language is commonly referred to as the Construction

Industry Proviso ("proviso") and generally exempts those in the construction industry from the

prohibitions of section 8(e).  Defendant contends that plaintiffs' antitrust claims fail because the

union signatory subcontracting clause with the construction employers is entirely lawful under

the proviso.  Plaintiffs counter that exemption under the proviso is an affirmative defense and

therefore inappropriate in a pre-answer Rule 12(b)(6) motion.  Because the facts supporting the

defense appear on the face of the complaint it is properly raised in a Rule 12(b)(6) motion.

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also generally Cal. State Council of*

*Carpenters v. Associated General Contractors of Cal., Inc.,* 648 F.2d 527, 532-33 (9th Cir. 1980)

(discussing labor's antitrust exemptions raised in motion to dismiss), *rev'd in part on other*

*grounds*, *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

U.S. 519 (1983).

　　Plainly read, the proviso would seem to shelter the union signatory subcontracting

agreements because the proviso expressly states that section 8(e) does not apply to agreements

that limit the contracting of construction site work.  In *Connell Construction Co. v. Plumbers &*

*Steamfitters Local Union No. 100*, however, the Supreme Court held that literal compliance with

the proviso is insufficient and that section 8(e) should be interpreted in light of its "statutory

setting and the circumstances surrounding its enactment."  421 U.S. 616, 628 (1975).  After a

review of the legislative history of section 8(e), the Court held that, even though Congress

- 14 -

expressly permitted labor organizations and employers in the construction industry to enter into agreements otherwise prohibited, Congress intended the proviso to apply only to agreements in the context of a collective-bargaining relationship. *Id.* at 629-33. The Court, principally concerned with job sites at which union workers and nonunion workers were employed, i.e., shoulder-to-shoulder friction, went on to state that agreements "with 'stranger' contractors, not limited to any particular job site" were not agreements obtained in the context of a collective-bargaining relationship. *Id.* at 631-33. The collective-bargaining process concerns only the parties to the collective bargaining relationship, and relates to wages, hours, conditions of employment, or other relevant subjects of collective bargaining. *Id.* at 622. Accordingly, under the holding of *Connell*, the Council of Carpenters' union signatory subcontracting clause falls within the protective reach of the proviso only if the agreements containing the clause were obtained in the context of a collective-bargaining relationship.

Plaintiffs contend that the union signatory subcontracting clauses at issue here, although incorporated into agreements purporting to be collective bargaining agreements, are not protected by the proviso because the agreements are not true collective bargaining agreements. The agreements between the Council of Carpenters and the construction employers, plaintiffs allege, do not encompass the traditional subjects of collective bargaining but serve only to expand the Carpenters' scope of work and jurisdiction and to freeze plaintiff unions out of the market. Although the complaint does not explicitly allege that the agreements were obtained outside the context of a collective-bargaining agreement, the complaint does state that Carpenters do not perform work on the job sites at issue nor does the Council of Carpenters intend its members to perform work on those job sites. The complaint also alleges that there is no

- 15 -

legitimate business purpose for the subcontracting agreements.

The Council of Carpenters counters that, because plaintiffs refer to the agreements as collective-bargaining agreements, plaintiffs are estopped from denying the validity of the agreements.  It also contends, relying on the Supreme Court's holding in *Woelke & Romero Framing, Inc. v. N.L.R.B.,* 456 U.S. 645 (1982), that it does not matter whether its members are performing work on the specified job sites in order for its agreements to fall under the proviso's protection.  Both arguments fail at this stage.

Regardless of the term used to describe the agreements between the Council of Carpenters and the construction employers, if the agreements do not embody the traditional subjects of collective bargaining, the union signatory subcontracting clause of the agreement is not protected by the proviso.  The holding in *Woelke* that the union signatory subcontracting clause in that case was lawful even though the underlying concern was not shoulder-to-shoulder friction between union and non-union members, as had been the issue in *Connell*, has no bearing on the facts of the instant case.   The *Woelke* Court considered the impact of section 8(e) on union signatory subcontracting clauses sought in the context of the renegotiation of a collective bargaining agreement.  *Id.* at 648.  The Court held that section 8(e) applies to union signatory subcontracting clauses so long as they are sought or negotiated in the context of a collective bargaining agreement, and that the proviso did not shelter only clauses aimed at preventing shoulder-to-shoulder friction.  *Id.* at 654.  Here, plaintiffs allege that the union signatory subcontracting clauses between the Council of Carpenters and the construction employers are not part of a true collective bargaining agreement.  Accordingly, even if it is permissible for the Council of Carpenters to enter into union signatory subcontracting clauses pertaining to job sites

at which it does not have members performing work or intending to perform work, the Council of Carpenters must nevertheless demonstrate that the clause was sought or negotiated in the context of a collective-bargaining relationship – a showing that has not been made at the pleading stage in this case.

    B.  <u>Non-Statutory Labor Exemption to the Antitrust Laws</u>

Defendant also moves to dismiss on the basis that its agreements are shielded from antitrust scrutiny by the non-statutory labor exemption to the antitrust laws.   The defense appears on the face of the complaint and therefore it is properly raised in a Rule 12(b)(6) motion. *McKenna*, 386 F.3d at 436.   In *Connell,* the Court recognized that certain clauses in collective bargaining agreements, even those concerning the construction industry, can act as a "direct restraint on the business market" in a manner having "substantial anticompetitive effects, both actual and potential."  421 U.S. at 625.  Restrictive clauses like the one at issue in this case may be challenged under federal antitrust laws unless the clause is protected by both the construction industry proviso *and* an antitrust labor exemption.  *Local 210,* 844 F.2d at 73.

 "[T]he [Sherman] Act is aimed primarily at combinations having commercial objectives and is applied only to a very limited extent to organizations, like labor unions, which normally have other objectives."  *Klor's Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 213 n.7 (1959). Nevertheless, "[i]t would be a surprising thing if Congress, in order to prevent a misapplication of [antitrust] legislation to labor unions, had bestowed upon such unions complete and unreviewable authority to aide business groups to frustrate its primary objective."  *Allen Bradley Co. v. Local Union No. 3, Int'l Bhd. of Elec. Workers,* 325 U.S. 797, 809-10 (1945).

Courts have long recognized the tension between national antitrust policy and national

labor policy.  In light of the competing interests of congressional policy favoring both collective

bargaining under the NLRA and free competition in business, two antitrust exemptions are

recognized.  *Connell,* 421 U.S. at 622.  The statutory exemption provides that union activity is

exempt from antitrust liability "so long as [the] union acts in its self-interest and does not

combine with non-labor groups."[3]  *United States v. Hutcheson*, 312 U.S. 219, 232 (1941).  The

non-statutory exemption provides that, where the alleged anticompetitive conduct is inherent in

the collective-bargaining process, concerns only the parties to the collective bargaining

relationship, and relates to wages, hours, conditions of employment, or other relevant subjects of

collective bargaining, the restraints are lawful.  *See Connell*, 421 U.S. at 622.   Having already

concluded that protection by the proviso is not apparent from the complaint, I consider whether

the non-statutory labor exemption to the antitrust laws bars plaintiffs' claims.

In this circuit, a court assessing whether an agreement is protected by the non-statutory

exemption should consider the relative impact of the agreement on the product market and the

interests of the union members.  *See Local 210,* 844 F.2d at 79.  The *Local 210* decision also

instructs the district court to balance the conflicting policies embodied in labor and antitrust

laws.  The court should first consider whether the agreement at issue furthers goals that are

protected by national labor law and are within the scope of traditionally mandatory subjects of

collective bargaining.  Second, the court should consider whether the agreement imposes a direct

restraint on the market that has substantial anticompetitive effects that do not follow naturally

---

[3] Defendant has not claimed that the challenged agreements fall within the statutory exemption.
In any event, the agreements would not fall under the statutory exemption because the
agreements concern union and non-labor party conduct.  *See Local 210*, 844 F.2d at 79.

- 18 -

from the collective bargaining agreement.  If the agreement is a legitimate collective bargaining agreement, then the "touchstone in assessing its validity must be the policies embodied in federal labor law." *Id.* at 81.  Traditionally, mandatory subjects in a collective bargaining agreement include wages, hours, fringe benefits, workplace conditions, and other subjects that are more likely to embody legitimate employee concerns about compensation, workplace, or security, and less likely to be restraints on competition.  *See* 1B Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, at ¶ 256d3 (3d ed. 2007).  Accordingly, agreements between unions and firms that do not employ the unions' members are treated as encompassing non-mandatory subjects.  *Id.*

Accepting the allegations in the complaint as true, it is not evident from the face of the complaint that collective-bargaining agreements between the Council of Carpenters and the construction employers further goals that are protected by national labor law and are within the scope of traditionally mandatory subjects of collective bargaining and the restraints imposed on the marketplace naturally flow from the collective bargaining agreements.  If plaintiffs prove that the agreements between Carpenters and construction employers are not true collective-bargaining agreements because the agreements do not set wages, hours, terms and conditions of work and other relevant subjects of collective bargaining, the union signatory subcontracting clause would not have been obtained within the collective-bargaining relationship and would not be entitled to protection under the non-statutory labor exemption.  Accordingly, the motion to dismiss on those grounds is denied.

C.  <u>Antitrust Injury</u>

1.  *Section 1*

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of

trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.  Pleading a section 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made" in restraint of trade.  *Twombly,* 550 U.S. at 556.   A plaintiff must offer "plausible grounds to infer an agreement," which means "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."  *Id.*

Here, plaintiffs allege that the union signatory subcontracting clause violates antitrust laws because the Council of Carpenters has no legitimate business reason for restricting plaintiffs' ability to bid on, be awarded, perform, and benefit from performing work on the job sites.  Generally, restrictions on entities with whom contractors can subcontract are entirely permissible so long as those restrictions affect only the parties to the agreements, and the agreements concern wages, hours, or conditions of employment in the context of bona fide arm's length bargaining.  *Areeda* ¶ 256d at 113-14.   Courts have found antitrust violations where agreements concern other issues.  *Connell,* 421 U.S. at 625-26 (even where the goal of the union is legal, i.e., organizing as many subcontractors as possible, agreements outside those of a lawful collective bargaining agreement cannot claim a non-statutory exemption from the antitrust laws). An agreement between a union and an employer,

> outside a collective bargaining relationship, which imposes a direct restraint upon a business market, and which is not justified by congressional labor policy because it has actual or potential anticompetitive effects that would not flow naturally from the elimination of competition over wages and working conditions, is not exempt from antitrust scrutiny.

*Larry V. Muko, Inc. v. Southwestern Pa. Bldg. & Constr. Trades Council*, 609 F.2d 1368, 1373 n.99 (3d Cir. 1979), *cert denied*, 459 U.S. 916 (1982).

Here, if the Council of Carpenters' union signatory subcontracting clauses are not part of a bona fide arm's length collective bargaining relationship and serve only to exclude plaintiffs' union members from job sites without also protecting the wages, hours and working conditions of Carpenters, the agreements could violate antitrust laws.  Defendant counters that plaintiffs' contention that the Council of Carpenters has entered into the union signatory subcontracting clauses in an attempt to expand work jurisdiction to work not traditionally performed by its members in the relevant market areas necessarily defeats the allegation that the Council of Carpenters lacks a legitimate purpose in entering into the agreements.  Even if the Council of Carpenters has entered into the agreements in an effort to expand its scope of work and jurisdiction, doing so does not negate the anti-competitive impact of the agreements if the Council of Carpenters has not negotiated the agreements within the context of a collective bargaining relationship.  Indeed, if plaintiffs prove that the agreements are not part of a legitimate collective bargaining process, it does not matter what plaintiffs allege the Council of Carpenters' ultimate goal might be.  Accepting as true that Carpenters do not intend to perform work on the six job sites identified in the complaint, it is plausible that discovery will reveal that those agreements are not the by-product of a collective-bargaining relationship and therefore violate the antitrust laws.  Accordingly, the motion to dismiss for failure to state a section 1 claim is denied.

    2.  *Section 2*

Plaintiffs have alleged that the Council of Carpenters has attempted to monopolize the relevant work in the relevant market area for Carpenters in violation of 15 U.S.C. § 2.  Compl. at ¶ 61.  A section 2 claim, unlike a section 1 claim, is aimed at a "pernicious market structure in

which the concentration of power saps the salubrious influence of competition." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 272 (2d Cir. 1979), *cert denied*, 444 U.S. 1003 (1980). To establish a defendant's liability under section 2 of the Sherman Act, a plaintiff must show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 178 (2d Cir. 1990) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966)). "Monopoly power 'is a matter of capacity – the possession of power to control prices or exclude competition.'" *Broadcast Music, Inc. v. Hearst/ABC Viacom Entm't Servs.,* 746 F. Supp. 320, 327 (S.D.N.Y. 1990) (citing *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d at 272). "Before monopoly power may be assessed, the relevant geographic and product markets must be defined." *Broadcast Music, Inc.,* 746 F. Supp. at 372.

Here, the geographic market is the New England region and the relevant product market is the construction industry. Accepting the allegations in the complaint as true, the Council of Carpenters possesses the monopoly power to exclude competition from the construction industry within the New England region. The inquiry next turns to whether plaintiffs have adequately pled attempted monopolization. To do so requires the plaintiff to plead "(1) anticompetitive conduct; (2) intent to monopolize; and (3) a dangerous probability of obtaining monopoly power." *Delaware & Hudson Ry.,* 902 F.2d at 180. For the reasons already discussed, the plaintiffs have sufficiently alleged anticompetitive conduct. *See* Section C (1), *supra.* With respect to the two remaining elements, accepting as true that the Council of Carpenters has monopoly power, plaintiffs have sufficiently alleged that the Council of Carpenters intends for

- 22 -

its agreements to exclude others from the market and, if successful, it follows that there exists a

dangerous probability that the Council of Carpenters would obtain monopoly power.

Accordingly, the motion to dismiss for failure to state a section 2 claim is denied.

   D.   Standing of Union and Pension Funds to Bring Antitrust Claims

      Defendant also moves to dismiss the claims of the plaintiff unions and pension funds on

the ground that the harms complained of are too remote and indirect to confer standing.[4]  A

private plaintiff must demonstrate standing in order to bring a federal antitrust action.  *See*

*Cargill, Inc. v. Monfort of Colo.,* 479 U.S. 104, 110 & nn.5-6 (1986).  In the Second Circuit, the

court assumes the existence of a violation when addressing the issue of standing.   *Daniel v.*

*American Bd. of Emergency Med.*, 428 F.3d 408, 436-37 (2d Cir. 2005).  In evaluating whether a

plaintiff has standing, the district court must consider whether plaintiff has pled: (1) an injury in

fact to plaintiff's business or property, (2) that is not remote from or duplicative of that sustained

by a more directly injured party, (3) that qualifies as an antitrust injury, and (4) that translates

into reasonably quantifiable damages.  *Id.*

      Mere injury or the possibility of injury is not enough to confer standing; the plaintiffs

must demonstrate an antitrust injury.  "The antitrust injury requirement obligates a plaintiff to

demonstrate, as a threshold matter, 'that the challenged action has had an *actual* adverse effect

on competition as a whole in the relevant market; to prove it has been harmed as an individual

competitor will not suffice.'" *George Haug Co. v. Rolls Royce Motor Cars, Inc.,* 148 F.3d 136,

139 (2d Cir. 1998) (quoting *Capital Imaging v. Mohawk Valley Med. Assoc.,* 996 F.2d 537, 543

---

[4] Note that the Council of Carpenters did not move to dismiss the claims by the employer
association plaintiffs on standing grounds.

(2d Cir. 1993)).  The requirement to demonstrate standing applies with equal force to claims, such as those here, for equitable relief.  *See generally Cargill, Inc.,* 479 U.S. at 111-12.

Assuming for the purposes of this motion that the challenged agreements are anti-competitive, the agreements first and foremost harm the plaintiff employers – M.R.S., Barrett, Peterson, and Berlin Steel.  The plaintiff employers have been prevented from bidding on the following projects: New Rowe Residences, Bryant University, Immaculate Conception Catholic Regional School (M.R.S. only), Bay State Medical Center, and the New London Schools.[5]  The plaintiff employers have suffered a lost opportunity to compete.  That is a recognized injury under antitrust law.

The union plaintiffs have also stated an injury that is recognized under antitrust law.  The facts alleged in the complaint indicate that Council of Carpenters prevented members of the plaintiff-unions from bidding on relevant work.  In arguing that the this harm is too indirect to support standing, the Council of Carpenters relies heavily on *Associated General Contractors of Cal v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983).  That case, however, is distinguishable.  In *Associated General Contractors*, the defendant was an employer association that had allegedly attempted to coerce general contractors and potential clients to hire non-union contractors and subcontractors.  *Id.* at 902-03.  The Supreme Court held that the union-plaintiffs' injury was too remote to confer standing.

In conducting its standing inquiry, the Court noted that it was "appropriate to focus on the nature of the plaintiff's alleged injury," because "the Sherman Act was enacted to assure

_____

[5]  With respect to the 360 State Street and St. Francis projects, the complaint states that the plaintiffs were not prevented from bidding on those projects because the contractors did not acquiesce to pressure from Carpenters.

customers the benefits of price competition, and our prior cases have emphasized the central interest in protecting the economic freedom of participants in the relevant market." *Id.* at 908. The Court held that there was no standing in part because "the Union was neither a consumer nor a competitor in the market in which trade was restrained." *Id.* at 909.

In this case, in contrast, the plaintiff-unions <u>are</u> competitors in the market in which trade was restrained.  Here, the defendant-union has allegedly attempted to block rival unions from job sites.  In essence, the defendant-union is attempting to monopolize work that had previously been performed by the plaintiff-unions' members, and push the plaintiff-unions out of the relevant market.  The plaintiff-unions thus are part of the class the Sherman Act was designed to protect, because the harm here goes to "the central interest in protecting the economic freedom of the participants in the relevant market." *Id.* at 908.

Finally, in *Associated General Contractors*, the allegations were much vaguer than the allegations in this case.  Specifically, in *Associated General Contractors* there was no allegation that any construction "firm was prevented from doing business with any union firms." *Id.* at 911.  Here, such allegations form the basis for the complaint.  In short, the plaintiff-unions have alleged sufficient facts to demonstrate that they have standing to bring this case, and the motion to dismiss the union plaintiffs for lack of standing is denied.

Unlike the unions' injuries, the possibility of injury to the pension fund plaintiffs is both remote and indirect.  The pension fund plaintiffs argue that they risk becoming underfunded at some point in the future if Carpenters are permitted to enforce the union signatory subcontracting clause.  The injury is wholly indirect, being based entirely on the consequences of direct harm to the union plaintiffs, and thus too remote to confer standing.  The pension fund plaintiffs have

failed to demonstrate an antitrust injury that would confer standing for a claim for money damages.

Although the pension fund plaintiffs appear to acknowledge that they do not have standing to pursue a claim for money damages, they argue that they <u>do</u> have standing to pursue a claim for declaratory or injunctive relief.  The pension fund plaintiffs are correct that the "antitrust standing analysis is more flexible and less demanding for claims for injunctive relief than it is for those seeking money damages, because 'one injunction is as effective as 100, and . . . 100 injunctions are no more effective than one.'" *Freedom Holdings, Inc. v. Cuomo*, 592 F. Supp. 2d 684, 693 (S.D.N.Y. 2009) (quoting *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 111 n.6).  Nevertheless, even a plaintiff seeking injunctive relief must satisfy Article III standing requirements, and thus assert an injury that is "sufficiently direct and non-speculative." *Id.* at 694.  The injury of the pension fund plaintiffs is completely indirect and speculative, and as such, cannot satisfy even the lower standing requirements for injunctive relief.  Accordingly, the motion to dismiss the pension fund plaintiffs for lack of standing is granted.

   E.  <u>Labor Law Violation</u>

In the second count, M.R.S. alleges that the Council of Carpenters, in concert with its signatory construction employers, has violated 29 U.S.C. § 158(b)(4) (section 8(b)(4) of the NLRA) by encouraging and inducing its signatory contractors to refrain from engaging and entering into contracts with M.R.S. in violation of 29 U.S.C. § 187.  M.R.S. claims that the Council of Carpenters attempted to force M.R.S. to enter into agreements with the Council of Carpenters for work not traditionally performed by Carpenters and thus to expand the relevant work performed by Carpenters into the jurisdiction of work traditionally performed by plaintiffs.

Furthermore, M.R.S. contends that the conduct is aimed at expanding the Council of Carpenters'

representation to employees performing work not traditionally performed in the relevant market

area.  This includes job sites in which there are no Carpenters performing bargaining unit work.

Section 8(b)(4) of the NLRA makes it unlawful to, *inter alia,* threaten, coerce, or restrain

any person engaged in commerce or in an industry affecting commerce, where the object thereof

is forcing or requiring any person to cease using, selling, handling, transporting, or otherwise

dealing in the products of any other producer, processor, or manufacturer, or to cease doing

business with any other person.  Here, M.R.S. alleges that Carpenters forced Turgeon, a

Carpenters signatory, to cease doing business with M.R.S. in violation of section 8(b)(4).

Council of Carpenters moves to dismiss the claim on the basis that M.R.S. fails to state a

claim under section 8(b)(4); defendant also argues that, because M.R.S. allegedly could not

transact business in Rhode Island at the time the May 2009 contract was rescinded, its claim

must fail.  Defendant maintains that, because the union signatory subcontracting clause is part of

a valid collective bargaining agreement, any restraint is protected by the construction industry

proviso.  Because it is not settled that the challenged union signatory subcontracting agreements

are part of a valid collective bargaining agreement, whether the agreements are protected by the

construction industry proviso is an open question.  Furthermore, whether M.R.S. could transact

business in Rhode Island cannot be determined from the face of the complaint.  Accordingly, the

motion to dismiss the second count of the complaint is denied.

## IV.     Conclusion

Accepting as true the allegations in the complaint, the challenged agreements between

Carpenters are not necessarily protected by the construction industry proviso or the non-statutory

labor exemption to the antitrust laws.  Accordingly, the plaintiffs have stated an antitrust claim.

Nevertheless, the pension fund plaintiffs have asserted an injury that is both indirect and

speculative, and thus, the motion to dismiss count one for lack of standing is granted with respect

to those plaintiffs.  The motion to dismiss count one is denied in all other respects.

So ordered.

Dated at Bridgeport, Connecticut this 20th day of March 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge